**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>LOUIS HOLGER EKLUND,<br><br>                Defendant. | Case No. 3:18-cr-00035-SLG |

**ORDER REGARDING MOTIONS FOR RULE 17(a) SUBPOENAS**

Pending before the Court are six motions for Rule 17(a) subpoenas filed by *pro se* defendant Louis Holger Eklund:

- Docket 442: Motion to Issue Subpoena for Former AK House Representative, Tammie Wilson, Pursuant to Fed. R.Crim.P Rule 17(a)

- Docket 443: Motion for Subpoena for Anchorage Correctional Complex Sgt. Jason Marvel, Pursuant to Fed.R.Crim.P Rule 17(a)

- Docket 448: Motion to Issue Subpoena for Philip N. Kaufman Pursuant to the Federal Rules of Criminal Procedure Rule 17(a)

- Docket 452: Motion to Issue Subpoena for Deputy United States Marshal, Ryan Thompson, Pursuant to Fed.R.Crim.P Rule 17(a)

- Docket 456: Motion to Issue Subpoena for Federal Bureau of Investigation Agent, Joshua J. Ronitsch, Pursuant to Fed.R.Crim.P Rule 17(a)

- Docket 468: Motion to Issue Subpoena for Sophia Lottie Mercure Pursuant to Fed.R.Crim.P Rule 17(a)

Mr. Holger asserts that he does not need the Court to pay for service or witness fees and that each motion is brought pursuant to Federal Rule of Criminal Procedure 17(a). The issue presented by the pending subpoena motions is whether Rule 17(a) requires the Court to provide Mr. Holger with blank subpoenas for him to issue to witnesses, not all of whom appear to be relevant to this case.

Mr. Holger is charged with two counts of Cyberstalking based on conduct stemming from an Alaska state court Child in Need of Aid (CINA) case that resulted in Mr. Holger losing custody of his son. The alleged victims both played a role in the CINA case: One was the assistant attorney general who represented the State of Alaska and the other was the executive director of the Native Village of Kotzebue, which was involved pursuant to the Indian Child Welfare Act.

Throughout the course of this federal criminal proceeding, it has become apparent that Mr. Holger seeks to raise numerous issues at this trial that are not relevant to the Cyberstalking charges. Specifically, it appears that Mr. Holger seeks to turn this criminal case into a case against various state and federal government actors for what he believes to be their participation in, or failure to prevent or report, child kidnapping and trafficking and the sexual abuse of Alaska Native women.[1] To that end, Mr. Holger has engaged in such conduct as mailing

---

[1] For example, in one motion Mr. Holger writes: "The bad people are doing this out of retaliation for me exposing, to the public en masse, a government bad actor kidnapping & child human trafficking machine that trafficks [sic] native children, in violation of the Indian Child Welfare Act, for federal grant money, while lying about operating pursuant to—& not in violation of—the Indian Child Welfare Act. After I began to expose the child human trafficking machine the bad people retaliated upon me by targeting & preying upon innocent women & innocent children who

unfounded information about the alleged victims, the government actors involved in this case and in the CINA case, and court personnel to a variety of public figures such as local elected officials, federal congressional members, celebrities, and news outlets. He has also filed frivolous civil suits in this district and in Alaska state court that include similar unfounded information. And he has repeatedly violated court orders in this case.[2] The Court has also had to strike from the record numerous irrelevant letters sent by Mr. Holger to various people not associated with this case, which Mr. Holger then attempted to file into the docket in this case.[3] Mr. Holger has also created and filed false documents into the record that purport to be court orders, which has caused the Court to order those filings to be marked "Void: This is not a valid court order. It is a filing by a self-represented litigant."[4] Mr. Holger's conduct demonstrates his attempts to expand this case far beyond the scope of the charged conduct.

---

I know & love (my wife, children & personal female friends & tribal members). Kidnap, violence, & rape was their preferred method of retaliation." Docket 448 at 1–2.

[2] Based on the record in this case, the Court found it "likely that Mr. Holger would attempt to intimidate, harass, or tamper with witnesses and that a protective order would not adequately protect the witnesses from such attempted conduct." Docket 393 at 4.

[3] *See, e.g.*, Dockets 290–292, 296–304, 312–329, 337–343.

[4] *See, e.g.*, Docket 231 and Docket 239-3 (fake "arrest warrants" for various district court judges and state politicians); Docket 239 (fake "order to cease and desist"); Docket 239-1 (fake "oath of office"); Docket 240 (text order directing that such filings be marked as void).

## I. Legal standards

Federal Rule of Criminal Procedure 17(a) governs subpoenas to witnesses to testify at trial and provides that "[t]he clerk must issue a blank subpoena—signed and sealed—to the party requesting it, and that party must fill in the blanks before the subpoena is served." Historically, Rule 17(a) has been used by non-indigent defendants who can pay for service and witness fees. In contrast, Rule 17(b) was created to allow indigent defendants to obtain subpoenas for witnesses to testify at trial at no cost, and provides that the defendant may make an *ex parte* application for a subpoena and "the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Thus, while Rule 17(b) requires a showing of "the necessity of the witness's presence for an adequate defense," Rule 17(a) does not contain this requirement. It appears that the Rule 17(a) standard is why Mr. Holger—who has been found indigent and was previously appointed counsel—has elected to move for subpoenas under Rule 17(a).

## II. Requirement of a showing of necessity and relevance

Although Rule 17(a) does not contain an express requirement that a defendant make a showing of necessity and relevance, the Court concludes that is a proper requirement in this case. The Court will not issue "signed and sealed" blank subpoenas to Mr. Holger without first requiring a showing of relevance,

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas
Page 4 of 12

Case 3:18-cr-00035-SLG   Document 481   Filed 03/22/21   Page 4 of 12

despite his application for the subpoenas pursuant to Rule 17(a). The Court reaches this conclusion not because Mr. Holger is indigent nor because he is the defendant in this case,[5] but for the following reasons.

First, the Court has wide discretion to determine whether a subpoena should issue, and "[t]his discretion is necessary to prevent abuses often attempted by defendants."[6] Issuing blank subpoenas to a vexatious defendant without requiring a showing of necessity and relevance (and simply because the defendant asserts that he will pay for service and witness fees) would provide ample opportunity for such a defendant to abuse the subpoena process.

The Court acknowledges that Mr. Holger's right to subpoena witnesses rests not only on Rule 17 "but also on the Sixth Amendment right to compulsory process, and on the Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status."[7] The Court has considered Mr. Holger's rights under the Fifth and Sixth Amendments and gives great weight to his right to compulsory process. "However, the right to compulsory process is not an unlimited right."[8] Accordingly, "[w]hile the court is ready to allow and enforce

---

[5] If the motions had been made pursuant to Rule 17(b), the Court would reach the same conclusion it does here. Notably, Mr. Holger has elected to forego the protections offered by Rule 17(b), including the option to file his subpoena motions *ex parte* and to have the subpoenas issued at the expense of the court.

[6] *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990) (internal citations omitted).

[7] *Id.*

[8] *United States v. Rankin*, Case No. 2:15-CR-168, 2017 WL 2987197, at *1 (S.D. Ohio July 13,

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas
Page 5 of 12
Case 3:18-cr-00035-SLG   Document 481   Filed 03/22/21   Page 5 of 12

[Mr. Holger's] right to use the subpoena power of this court for legitimate defense purposes, it is this court's duty to make certain that the subpoena power is invoked legitimately and legally."[9]

Second, "subpoena power is a substantial delegation of authority . . . and those who invoke it have a grave responsibility to ensure it is not abused."[10] Mr. Holger has demonstrated that he will engage in a campaign of abusing the federal and state court systems to harass a wide range of individuals. In light of Mr. Holger's prior behavior in this case, the pending subpoena motions do not persuade the Court that Mr. Holger will not abuse the subpoenas to require the attendance of irrelevant witnesses at trial.

Finally, for a witness to be "necessary," that witness must be "relevant, material and useful to an adequate defense."[11] As stated by the Fourth Circuit, "[n]either rich nor poor defendants have an unfettered right to subpoenas without

---

2017) (discussing Rule 17(a)) (footnote omitted).

[9] *United States v. Santiago-Lugo*, 904 F. Supp. 43, 45 (D. P.R. 1995).

[10] *Theofel v. Farey–Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004); *see also United States v. Montanez-Ortiz*, 290 F.R.D. 33, 33 (D.P.R. 2013) ("The use of Rule 17 subpoenas is strictly regulated to avoid misuse, and to protect third-party rights."); *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 176 (D.D.C. 2015) ("Because subpoenas are issued with the Court's seal and backed by the threat of court-imposed sanctions, the mere fact that an attorney abuses the subpoena power directly implicates the court itself and creates an embarrassment for the institution.").

[11] *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990) (internal citations omitted); *accord United States v. Barker*, 553 F.2d 1013, 1021 (6th Cir. 1977) ("[T]he appropriate standard is whether defendants have alleged that the witnesses will testify about facts that are relevant to any issue in the case.").

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas
Page 6 of 12
Case 3:18-cr-00035-SLG   Document 481   Filed 03/22/21   Page 6 of 12

discretionary review by the district court.  The district court may . . . deny a motion for compulsory production of witnesses who could not offer relevant evidence and which the court believed would bring confusion to the trial[.]"[12]  The Ninth Circuit has set forth the standard for assessing whether Rule 17(b)'s "necessity of the witness's presence for an adequate defense" requirement has been met:  "*If the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face*, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous."[13]  The Court has applied this standard when considering Mr. Holger's motions for Rule 17(a) subpoenas.

### III. Application of standard to the instant motions

The Court has carefully reviewed the six pending motions for facts that, if true, would be relevant to this case.  The elements of Cyberstalking as charged in this case are:

- The intent to harass or intimidate a named victim

- by knowingly using the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce

- to engage in a course of conduct

---

[12] *United States v. Bennett*, 675 F.2d 596, 598 (4th Cir. 1982).

[13] *United States v. Sims*, 637 F.2d 625, 627 (9th Cir. 1980) (emphasis added).

- that knowingly causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress
- to a named victim, an immediate family member of the named victim, or a spouse or intimate partner of a named victim.[14]

Mr. Holger's proposed testimony falls into five categories: (1) testimony from a former state legislator about her views on "legal kidnapping" by the Alaska Office of Children's Services[15]; (2) testimony about a Prison Rape Elimination Act (PREA) report Mr. Holger filed in December 2018 regarding the purported sexual assault of Alaska Native women in the Kotzebue jail and the status of the investigation into that PREA report[16]; (3) testimony from the author of an expert report that was introduced in the CINA case[17]; (4) testimony from law enforcement agents about whether an alleged victim in this case is a suspect or person of interest in connection with "the kidnappings, beating & rapes of my wife and children"[18]; and (5) testimony that Mr. Holger had repeatedly tried to call the Office of Children's Services in July 2016 during the time period that an OCS employee—who is not

---

[14] *See* 18 U.S.C. § 2661A(2); Docket 97 (First Superseding Indictment).

[15] Docket 442.

[16] Docket 443.

[17] Docket 448.

[18] Docket 452; Docket 456.

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas

an alleged victim in this case but is a named witness—claims she was unable to contact Mr. Holger.[19]

The CINA case has considerable relevance here to the extent it forms the basis and background of the Cyberstalking charges. Nonetheless, the Court does not intend to allow any evidence as to the *merits* of the CINA case—that case has already been litigated in state court and its merits are not at issue here. However, the Court intends to allow limited evidence of the CINA case for the sole purpose of showing that the case occurred and demonstrating the relationship between Mr. Holger and the alleged victims and other witnesses. The Court also does not intend to allow any evidence *intended to prove the accuracy of what Mr. Holger believes* about OCS, the CINA case, the purported sexual assault of women held at the Kotzebue jail, the purported rape of his wife, or a purported child kidnapping and trafficking ring; allowing evidence to try and prove the accuracy of any of those beliefs would splinter the criminal trial into multiple sub-trials requiring numerous witnesses that are irrelevant to the Cyberstalking charges, would confuse the issues, would cause undue delay, and may mislead the jury.[20] However, the Court intends to allow evidence of Mr. Holger's *state of mind* during the time period alleged in the First Superseding Indictment, regardless of the validity of his

---

[19] Docket 468.

[20] Fed. R. Evid. 403.

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas
Page 9 of 12

beliefs.[21] As an example of the intended limitations, Mr. Holger may be permitted to testify that he believed the CINA case was mishandled because he believes his tribe did not get proper notice pursuant to the Indian Child Welfare Act; he will not be permitted to call witnesses or enter exhibits to detail the legalities of the Indian Child Welfare Act or try to prove that the Act was violated.

In light of those considerations and the standard for relevancy, the Court finds as follows:

- The testimony of the former state legislator is not relevant because it appears intended only to prove the accuracy of what Mr. Holger believes, and any probative value it has is substantially outweighed by the danger of confusing the issues, misleading the jury, causing undue delay, and wasting time.

- The testimony of an Anchorage jail sergeant about the PREA report from 2018 is not relevant because it appears intended only to prove the accuracy of what Mr. Holger believes with respect to the Kotzebue jail, and any probative value it has is substantially outweighed by the danger of confusing the issues, misleading the jury, causing undue delay, and wasting time.

- The Court has conducted an in camera review of the reports authored by Philip Kaufman and finds that Mr. Kaufman may be able to provide relevant

---

[21] The First Superseding Indictment alleges that the Cyberstalking occurred from July 1, 2016, to March 16, 2019. Docket 97.

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas
Page 10 of 12
Case 3:18-cr-00035-SLG Document 481 Filed 03/22/21 Page 10 of 12

testimony as to Mr. Holger's state of mind during the relevant time frame. Therefore, the Court will issue a subpoena for Mr. Kaufman, but he will only be allowed to testify in accordance with the Federal Rules of Evidence and Mr. Holger will not be permitted to re-litigate the merits of the CINA case.[22]

- The testimony of law enforcement agents about whether an alleged victim in this case is a suspect or person of interest in connection with "the kidnappings, beating & rapes of my wife and children" is likely comprised of Mr. Holger's own statements to the agents, which is inadmissible hearsay if offered for the truth of the matter asserted. The agents' testimony about Mr. Holger's family members also appears intended to prove the accuracy of what Mr. Holger believes, which is not relevant evidence in this case, and any probative value it has is substantially outweighed by the danger of confusing the issues, misleading the jury, causing undue delay, and wasting time. Testimony of those agents about the purported assaults and abuse of other women and children is not relevant because it is only intended to prove the accuracy of what Mr. Holger believes, and any probative value it has is substantially outweighed by the danger of confusing the issues, misleading the jury, causing undue delay, and wasting time.

---

[22] To the extent the motion at Docket 448 could be construed as a Rule 17(c) motion *duces tecum* for a copy of Mr. Kaufman's reports, that portion of the motion is denied. The Kaufman reports are being provided to Mr. Holger. *See* Docket 478.

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas
Page 11 of 12
Case 3:18-cr-00035-SLG   Document 481   Filed 03/22/21   Page 11 of 12

- Testimony from Mr. Holger's sister may be relevant as to Mr. Holger's state of mind in July 2016 regarding an OCS worker who is not an alleged victim but is listed as a government trial witness. Therefore, the Court will issue a subpoena for Sophie Lottie Mercure, but she will only be allowed to testify in accordance with the Federal Rules of Evidence, and Mr. Holger will not be permitted to re-litigate the merits of the CINA case.

## CONCLUSION

In light of the foregoing, the motion at Docket 448 is GRANTED; the Clerk of Court shall issue a Rule 17(a) subpoena to Mr. Holger to use to subpoena Philip Kaufman to testify at trial. The motion at Docket 468 is GRANTED; the Clerk of Court shall issue a Rule 17(a) subpoena to Mr. Holger to use to subpoena Sophia Lottie Mercure to testify at trial.[23] Because of the concerns outlined in this order, the Clerk of Court shall pre-fill the subpoenas with Philip Kaufman and Sophia Lottie Mercure's names. The motions at Dockets 442, 443, 452, and 456 are each DENIED.

IT IS SO ORDERED.

DATED this 22nd day of March, 2021, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[23] The Court will allow Mr. Holger to renew the motion at Docket 468 to the extent the motion seeks a Rule 17(c) subpoena duces tecum for the phone records. Such motion must include to whom (*i.e.* which cell phone carrier or person) the subpoena should be directed and for which dates.

Case No. 3:18-cr-00035-SLG, *United States v. Eklund*
Order Re Motions for Rule 17(a) Subpoenas
Page 12 of 12
Case 3:18-cr-00035-SLG   Document 481   Filed 03/22/21   Page 12 of 12